UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
HEATHER DEBERRY,

                              Plaintiff,

        -against-

BROOKDALE UNIVERSITY HOSPITAL
AND MEDICAL CENTER,

                              Defendant.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**

12-cv-6251 (SLT) (RLM)

**TOWNES, United States District Judge,**

      Plaintiff Heather DeBerry brings this employment discrimination suit against her current employer, Brookdale Hospital Medical Center, incorrectly identified in the complaint as Brookdale University Hospital and Medical Center, ("Brookdale"), alleging that she was discriminated against and subjected to a hostile work environment on account of her race and ethnicity in violation of (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), (2) New York State Human Rights Law, New York State Executive Law § 290, *et seq.*, ("NYSHRL"), and (3) New York City Human Rights Law, Title 8 of the New York City Administrative Code ("NYCHRL").  Now before the Court is Brookdale's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, the motion is granted in part and denied in part.

## LEGAL STANDARD

      Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Ashcroft v. Igbal*, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Igbal*, 556 U.S. at 678-79.

The Supreme Court has clarified that *Twombly* sets out a two-pronged approach for district courts considering motions to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678-79 (2009). District courts should first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

This court is generally limited to the "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). It may also consider "matters of which judicial notice may be taken, or ... documents either in plaintiff[']s[] possession or of which plaintiff[] had knowledge and relied on in bringing suit," *Brass v. Am. Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir. 1993) (citation omitted), such as the Equal Employment Opportunity Commission ("EEOC") charge of discrimination and decision. *See Morris v. David Lerner Associates*, 680 F. Supp. 2d

430, 435-36 (E.D.N.Y. 2010) (considering EEOC charge of discrimination and right to sue letter as public documents and documents relied on in drafting the complaint).

**BACKGROUND**

The Court accepts as true, for purposes of this motion, the following facts alleged in Plaintiff's Complaint:

*1. Employment at Brookdale*

For approximately 20 years, DeBerry, a Caribbean-American, has worked at Brookdale. (Compl. ¶ 6.) Since 2003, she has held the position of Accounts Receivable Clerk in the finance department. (Compl. ¶ 8.) In this position, she received exemplary performance evaluations in which she was described as "hard-working" and "error-free," and told to "consider advancement beyond [her] position." (Compl. ¶ 9.)

*2. Discriminatory Harassment by Tashika Williams*

In 2007, Tashika Williams, an African-American coworker, began to subject plaintiff to pervasive and sometimes violent harassment motivated by Williams' belief that plaintiff is "not a real American." (Compl. ¶¶ 10-11.) Williams also targeted two other coworkers of Caribbean descent. (Compl. ¶ 12.) Plaintiff's complaint recites a litany of disturbing incidents of abuse. For example, on one occasion, Williams threatened plaintiff and yelled that plaintiff "needed a piece of wood inside her." (Compl. ¶ 16.) On numerous occasions, Williams intentionally bumped into plaintiff in the hallways. (Compl. ¶ 19, 29.) Williams also tried to slam plaintiff's hand in a bathroom door (Compl. ¶ 21) and once threw dark liquid at plaintiff that Williams later identified as holy water (Compl. ¶¶ 27-30, 39).

### 3. *Lack of Internal Response to Plaintiff's Complaints*

Plaintiff frequently complained to supervisors about Williams' conduct. Although supervisors held several meetings to review plaintiff's complaints, Williams was only disciplined on one occasion. (Compl. ¶¶ 15, 18, 19, 21, 25.)

On August 15, 2011, plaintiff complained directly to human resources. (Compl. ¶ 31). Brookdale took no action until plaintiff retained counsel and, on October 19, 2011, sent a letter regarding the harassment, through counsel, to Brookdale. (Compl. ¶ 33-35.) In October 2011, Brookdale conducted interviews to investigate plaintiff's complaints, but concluded the investigation "without calling [p]laintiff's witnesses and without telling her what they would do to improve the situation." (Compl. ¶ 41.)

### 4. *Retaliation for Complaint to Human Resources*

Williams' harassment of plaintiff did not abate. (Compl. ¶ 42.)[1] Rather, "shortly after [p]laintiff's August 15, 2011[] complaint to Human Resouces," as soon as September 27, 2011, plaintiff's worklife significantly deteriorated. (Compl. ¶ 43-44.) Williams' friend, Assistant Director Khadija Knibbs, who is also African-American, changed administrative rules to make plaintiff's job more difficult and abruptly reassigned plaintiff to more difficult accounts. (Compl. ¶¶ 13, 44-50.) Knibbs had an "angry attitude" when assigning these additional tasks to plaintiff. (Compl. ¶ 48.) Satisfactorily completing all of these new assignments was a "practical impossibility" and plaintiff believed Knibbs "set her up for failure by assigning these rather impossible tasks." (Compl. ¶¶45, 48.)

### 5. *Verified Complaint Before New York State Division of Human Rights and EEOC Charge of Discrimination*

---

[1] The New York Division of Human Rights decision indicates that Williams was "eventually terminated after [plaintiff's] complaint about Williams' conduct." (Docket No. 17-1 at 2.)

On December 8, 2011, plaintiff filed a verified complaint with the New York Division of Human Rights ("NYDHR") alleging that plaintiff was discriminated and retaliated against in violation of city and state law. On June 15, 2012, the NYDHR issued a finding that "there is NO PROBABLE CAUSE to believe that [Brookdale] engaged in or [is] engaging in the unlawful discriminatory practice complained of," because the only allegation of discriminatory animus was a 2007 comment by Williams. (Docket No. 17-1.) The NYDHR complaint was cross-filed with the EEOC and on September 26, 2012, the EEOC adopted the NYDHR's findings and issued a Dismissal and Right to Sue letter. (Compl. ¶5 & Ex. A.)

*6. 2012 Incidents*

Plaintiff's complaint in this action includes a number of allegations that post-date her December 8, 2011 complaint with the NYDHR, namely: (1) in August 2012, plaintiff's job responsibilities were again altered, causing plaintiff to become "overwhelmed," culminating in poor performance evaluations (Compl. ¶¶45-51); (2) in October 2012, Katie Yakulis, a supervisor in plaintiff's department, yelled at plaintiff because of a misunderstanding about a training questionnaire (Compl. ¶¶ 52-54); (3) in a subsequent meeting to investigate the incident, which Knibbs also attended, Yakulis and another supervisor lied "to attempt to portray [p]laintiff in a false light," plaintiff's witnesses were not called, and at the conclusion of the meeting, no action was taken against Yakulis (Compl. ¶¶ 54-57); (4) the following day, plaintiff received a harassing phone call – "the caller was working at the direction of Defendant, to attempt to coerce [plaintiff] into making a mistake" (Compl. ¶ 58); and (5) in December 2012, plaintiff's work queue was changed again (Compl. ¶ 59). The only 2012 allegations that mention plaintiff's race or ethnicity are: (1) an allegation that plaintiff "is aware of other Caribbean employees who have been terminated for trivial matters after reporting Ms. Yakulis to her supervisor" (Compl. ¶ 58)

5

and (2) an allegation that the purpose of the December 2012 change to plaintiff's work queue "is to continue Defendant's practice of harassment and retaliation against [plaintiff]" (Compl. ¶ 59).

*7. The Instant Lawsuit*

On December 20, 2012, plaintiff commenced this action, alleging discrimination and hostile work environment claims and retaliation claims under Title VII, NYSHRL, and NYCHRL. Plaintiff's complaint is substantially identical to the complaint filed a year earlier with the NYDHR, except for the addition of the allegations from 2012, which post-date the NYDHR complaint.

*8. Defendant's Motion to Dismiss*

Defendant moves to dismiss (1) plaintiff's NYSHRL and NYCHRL claims as barred by the NYSHRL and NYCHRL election of remedies provisions and (2) plaintiff's Title VII retaliation claim for acts of retaliation that occurred after October 2011 for failure to exhaust administrative remedies.

**DISCUSSION**

As set forth below, the court finds that all of plaintiff's NYSHRL and NYCHRL claims are barred by their respective election of remedies provisions and plaintiff's Title VII claim is adequately exhausted.

*1. NYCHRL and NYSHRL Election of Remedies*

In this action, plaintiff brings the same NYSHRL and NYCHRL discrimination, hostile work environment, and retaliation claims that she brought before the NYDHR.

NYSHRL and NYCHRL create the right to be free of discrimination in employment on the basis of, *inter alia*, race, creed, and national origin. Executive Law § 296 (1); N.Y.C. Admin. Code § 8-107(1). To ensure the protection of these rights, the New York State Legislature

6

created two mutually exclusive routes for their vindication – one judicial and one administrative. *Freudenthal v. Cnty. of Nassau*, 99 N.Y.2d 285, 290 (2003).

The administrative route, which is commenced by filing a complaint with the NYDHR, has many advantages over litigation; it is procedurally less complicated and more affordable, and "offers a complainant remedies not available from a court," such as "restoring a benefit unlawfully taken from the aggrieved party, … order[ing] an employer to cease and desist the discriminatory practice, direct[ing] the reinstatement of employees with or without back pay, and award[ing] compensatory damages, including for mental anguish and other forms of pain and suffering." *Id*. at 290 (citations omitted). "And because conciliation efforts are an integral part of the administrative process, it provides a unique vehicle—effective in some instances—to resolve claims expeditiously. *Id*. at 291.

Under the statutory election of remedies provisions, once a claim is dismissed by the NYDHR, the complainant is generally foreclosed from seeking redress elsewhere and can only appeal to the Supreme Court of the State of New York. *York v. Assoc. of Bar of City of New York*, 286 F.3d 122, 127 (2d Cir. 2002) (discussing the "nearly identical" election of remedies provisions in the NYSHRL and NYCHRL) (construing N.Y. Exec. Law § 297(9) and N.Y.C. Admin. Code § 8-502(a)).[2] In other words, by electing to proceed along the administrative route, the complainant creates an "insuperable jurisdictional bar" to subsequent federal judicial review of these claims. *Moodie v. Fed. Reserve Bank of New York,* 58 F.3d 879, 882–84 (2d Cir. 1995). This is so, even if the facts alleged in the legal action differ from those brought before the NYDHR. So long as "substantially the same facts are involved, … the doctrine of election of

---

[2] NYSHRL, N.Y. Exec. Law § 297(9), contains three exceptions to the election of remedies bar. The exceptions, none of which are applicable here, are dismissal of the complaint by NYDHR for administrative convenience, untimeliness, or annulment.

7

remedies will bar any subsequent court proceedings. The facts need not be perfectly identical, and merely adding some additional facts and/or re-labeling the claim will not prevent the application of the doctrine of election of remedies." *Benjamin v. New York City Dep't of Health*, 851 N.Y.S.2d 68 (N.Y. Sup. Ct., N.Y. County, Oct. 23 2007) *aff'd*, 57 A.D.3d 403 (1st Dep't 2008).

That is precisely what happened here. Plaintiff's complaint in this action consists of a nearly verbatim copy of the complaint she filed before the NYDHR, with the exception that she has included descriptions of incidents of mistreatment that occurred after she filed her NYDHR complaint in further support of her claims. Accordingly, because the election of remedies bar is jurisdictional, plaintiff's NYSHRL and NYCHRL claims are dismissed in their entirety pursuant to Fed. R. Civ. P. 12(b)(1). *Shearon v. Comfort Tech Mech. Co., Inc.*, 936 F. Supp. 2d 143, 157 (E.D.N.Y. 2013) (dismissal under election of remedies bar is done pursuant Fed. R. Civ. P. 12(b)(1) rather than 12(b)(6)).[3]

## 2. *Exhaustion of Title VII Claims*

Defendant moves to dismiss plaintiff's Title VII retaliation claims that post-date the EEOC charge because plaintiff did not file a second EEOC charge to exhaust those claims. A district court may only review Title VII claims that were either contained in the EEOC charge or

---

[3] Plaintiff cites two cases in support of the proposition that an exception to the election of remedies doctrine exists when the NYDHR issues a dismissal without a hearing, *Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 729 (2d Cir. 2001), and *Lloyd v. New York Botanical Garden*, 03 CIV. 7557 (BSJ) (THK), 2004 WL 2093468 (S.D.N.Y. Sept. 17, 2004). No such exception exists. These cases concern whether a plaintiff is collaterally estopped by a no probable cause finding before the NYDHR from bring *federal* claims arising out of the same facts considered by the NYDHR when reviewing state and city law claims. *See Kosakow*, 274 F.3d 706 (considering whether ERISA and FMLA claims are collaterally estopped by factual findings of NYDHR on state and city law claims); *Lloyd*, 2004 WL 2093468 (considering whether plaintiff is collaterally estopped from adding 42 U.S.C. §§ 1981 and 1984 claims by NYDHR determination on state and city law claims).

are 'reasonably related' to claims in the charge. *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam). The purpose of the exhaustion requirement—namely, to encourage settlement of discrimination disputes through conciliation and voluntary compliance—would be defeated if a plaintiff could litigate a claim not previously presented to the EEOC. *See Miller v. Int'l Tel. & Tel.,* 755 F.2d 20, 26 (2d Cir. 1985). Accordingly, failure to file a timely administrative charge with the EEOC extinguishes the claim and prohibits recovery.

In *Butts v. New York Dep't of Hous. Preservation & Dev.*, the Second Circuit recognized three circumstances in which claims not explicitly raised in an EEOC charge could nonetheless be considered by the district court. 990 F.2d 1397, 1402 (2d Cir. 1993).[4] The first such circumstance arises when the facts in the charge lodged with the EEOC would have prompted the EEOC to investigate the unexhausted claim, or in other words, the claim would "reasonably be expected to grow out of the charge" that was made. *Id*. (quoting *Smith v. Am. President Lines, Ltd*., 571 F.2d 102, 107 n. 10 (2d Cir. 1978)). The provision for this type of 'reasonably related' claim is generally understood as "an allowance of loose pleading," made in recognition of the fact that EEOC charges are often filed without the benefit of counsel and the purpose of such charges is merely "to alert the EEOC to the discrimination that a plaintiff claims she is suffering." *Id.*; *accord Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2001). The second circumstance in which a claim not previously raised in an EEOC charge may be permitted to be raised in subsequent litigation arises when the new claim alleges retaliation by the employer against the employee for having filed the EEOC charge itself. *Butts*, 990 F.2d at 1402. This exception is animated by the fear that requiring a separate EEO filing "could have the perverse

---

[4] *Butts* was superseded by statute on other grounds as recognized by *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998).

9

result of promoting employer retaliation in order to impose further costs on plaintiffs and delay the filing of civil actions relating to the underlying acts of discrimination." *Id*. at 1402; *accord Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003); *Legnani*, 274 F.3d at 686. The third and final circumstance arises "where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Id*. at 1402-03. In *Butts*, the Second Circuit explained the logical underpinning of this final exception as follows:

> [An incident that is precisely the same as one included in an EEOC charge but which takes place subsequent to the filing of the EEOC charge] might not fall within the scope of the EEOC investigation arising from the charge, since it might occur after the investigation was completed, … [h]owever, the values associated with exhaustion are not entirely lost because the EEOC would have had the opportunity to investigate, if not the particular discriminatory incident, the method of discrimination manifested in prior charged incidents. The fact that a charge alleging the same method was not resolved by the EEOC to the plaintiff's satisfaction makes it more likely that a new charge alleging the later incident would meet the same fate. Our holding that such conduct is "reasonably related" implicitly recognizes the cost to a plaintiff of requiring exhaustion in circumstances where the likelihood of a successful settlement is limited.

*Id*. at 1402-03.

Defendant correctly points out that plaintiff's retaliation claims differ from those which she raised at the administrative level. Specifically, the allegations that post-date plaintiff's EEOC complaint are: (1) in August 2012, plaintiff's job responsibilities were again altered, causing plaintiff to become "overwhelmed," culminating in poor performance evaluations, (Compl. ¶¶45-51); (2) in October 2012, after Katie Yakulis, a supervisor in plaintiff's department yelled at plaintiff over a misunderstanding and in a subsequent meeting to investigate the incident attended by Knibbs a thorough investigation was not conducted (Compl. ¶¶ 52-57);[5]

---

[5] Plaintiff's complaint does not allege claims arising out of the underlying incident with Yakulis (as opposed to the meeting following the incident with Yakulis in which senior supervisors, including Knibbs, declined to respond to plaintiff's complaints). Plaintiff has not alleged that Yakulis' harassing conduct was motivated by anything other than a

(3) the following day, plaintiff received a harassing phone call; "the caller was working at the direction of Defendant, to attempt to coerce [plaintiff] into making a mistake," (Compl. ¶ 58); and (4) in December 2012, plaintiff's work queue was changed again, (Compl. ¶ 59). As stated above, the Second Circuit has recognized that claims not raised in an EEOC complaint may be pursued in a subsequent federal court action if they are "reasonably related" to those that were filed with the administrative agency.

Plaintiff asserts that her 2012 claims are "reasonably related" because they are retaliation claims and thus fit within the second *Butts* exception. However, although it is well settled that a plaintiff is not required to file another charge with the EEOC if her employer retaliates against her *for filing the initial EEOC charge*, no such rule applies when the plaintiff complains of retaliation for some other good faith opposition to discriminatory practices not arising out of her EEOC charge. *Cf Jenkins v. New York City Transit Auth.*, 646 F. Supp. 2d 464, 472 (S.D.N.Y. 2009) (explaining that retaliation claims unrelated to EEOC charge must be exhausted). In such a circumstance, she must exhaust that claim in order to proceed with it in federal court.

However, plaintiff's 2012 claims are 'reasonably related' under the third *Butts* scenario – she makes post-charge allegations that she has suffered "precisely the same" retaliatory conduct as she alleged in her EEOC charge. *See Butts*, 990 F.2d at 1402-03 (citing *Almendral v. N.Y. State Office of Mental Health*, 743 F.2d 963, 967 (2d Cir. 1984)). Where pre- and post-charge incidents involve similar facts, the 'reasonably related' inquiry turns on the degree of similarity; for this, the court must construe the term "precisely." During his tenure as a district court judge, Judge Gerard E. Lynch reasoned that:

---

misunderstanding about whether plaintiff submitted a certain training questionnaire. Plaintiff alleges that Brookdale's senior management's failure to respond appropriately was motivated by Knibbs discriminatory and retaliatory motives.

> [a]lthough 'precisely' must have meaning, …. [t]o read the term … narrowly would allow an individual or institution to achieve the same result as that complained of to the EEOC … for the same illegal reasons (discrimination and retaliation), but nonetheless prevent a plaintiff from raising these functionally identical issues in their lawsuit based on the EEOC charge simply by slightly varying the exact means of discrimination. That an employer uses different pretexts to [discriminate against a plaintiff] year after year as part of a regular policy of discrimination does not require the victim to file repeated EEOC charges and repeated separate lawsuits.

*Hinton v. City Coll. of New York*, 05 CIV. 8951 GEL, 2008 WL 591802 (S.D.N.Y. Feb. 29, 2008).

Illustrative is *Almendral*, in which plaintiff alleged that she was passed over for promotion on numerous occasions on account of her race. 743 F.2d 963. The Second Circuit held that incidents that occurred after plaintiff had filed her EEOC charge were "essentially the same" as the conduct identified in her EEOC complaint, even though the incidents differed, involving different schemes to exclude plaintiff from consideration ranging from performance reviews to delays in adding her 'promotion-ready' lists, because they all involved the "alleged manipulation of the civil service rules for discriminatory reasons in order to appoint someone other than [plaintiff]." *Id*. at 967.

On the other side of the spectrum is *Samimy v. Cornell Univ.*, in which the Western District of New York concluded that the third *Butts* exception did not apply because the unexhausted post-charge incidents occurred at different times, involved different decisionmakers, and differed in manner of discrimination. 961 F. Supp. 489, 493 (W.D.N.Y. 1997) (citing *Butts*, 990 F.2d at 1403). The plaintiff complained in his EEOC charge that he was being unfairly denied job opportunities as a result of a specific performance evaluation, but in his federal complaint, added that his position was subsequently altered and then terminated. *Id*. The court held that, "[g]iven the narrow scope of the EEOC charge," the termination was not "carried out in precisely the same manner alleged in the EEOC charge." *Id.; see also Magnello v. TJX*

*Companies, Inc.*, 556 F. Supp. 2d 114, 121 (D. Conn. 2008) ("[U]nexhausted claims do not constitute further incidents of discrimination carried out in precisely the same manner as that alleged in the EEOC charge because the claims involved differing positions, individuals and corporate divisions."). Unlike in *Almendral*, in which several different incidents each had the same effect—to unfairly deny plaintiff a promotion—in *Samimy* not only did the defendant's mechanisms of discrimination differ, *i.e.*, performance reviews compared to reassignment and termination, but the complained-of end result differed too – Samimy was first discriminated against and then terminated.

Here, plaintiff's unexhausted allegations include that her assigned accounts were abruptly changed twice in 2012 causing her to fall behind and receive poor performance reviews. In her EEOC charge, she alleged that her assigned accounts were changed on October 14, 2011 to accounts that "are particularly difficult to calculate the correct rates, even for those assigned routinely to the tasks" because Knibbs "set her up for failure" so that Knibbs could "blame [plaintiff] for poor performance." (Compl. ¶¶ 46-48). Clearly, the post-charge allegations are precisely the same as those included in the EEOC charge and are thus 'reasonably related' under the *Butts* test.

More difficult is plaintiff's allegation that after Yakulis, a supervisor, yelled at plaintiff over a misunderstanding, senior Brookdale officials, including Knibbs, did not conduct a thorough investigation. (Compl. ¶¶ 52-57.) Plaintiff had alleged in her EEOC charge that she was verbally and physically harassed by Williams on account of her ethnicity and when she complained to senior Brookdale officials, they did nothing to intervene – indeed, her complaints only caused Knibbs, a supervisor with a close relationship with Williams, to retaliate against plaintiff. Her 2012 allegations are "precisely the same," insofar as they are examples of backlash

13

that arose out of the same incident (plaintiff's complaint to human resources about Williams); involve the same decisionmakers (Brookdale's senior supervisors including Knibbs); and involved the same end-result (unabated harassment against plaintiff and retaliation against her by Knibbs on account of her good faith opposition to discriminatory conduct).

As to plaintiff's remaining unexhausted "claim" that she received a prank phone call, there is a difference between new unexhausted claims and factual allegations that are pled in a complaint but omitted from an EEOC charge which only serve to amplify and support the properly exhausted claims. This "new" allegation does not amount to a new claim; it is simply an additional factual allegation supporting plaintiff's underlying retaliation and hostile work environment claims. See *Wilson v. Family Dollar Stores*, CIV.A.06CV639 (DGT), 2007 WL 952066, at *7 (E.D.N.Y. Mar. 29, 2007). Additional factual allegations that simply amplify a claim that was included in the administrative complaint are not barred by the exhaustion rules. *See id*. (citing *Wu v. Thomas,* 863 F.2d 1543, 1547 (11th Cir.1989) (stating that "[j]udicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate" but that "[a]llegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate")); *cf Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (An employee may use time barred claims out of which no claims can arise "as background evidence in support of a timely claim."). Thus, it is appropriate to consider the fact that plaintiff received a prank phone call in considering plaintiff's claims that she was retaliated against and subjected to a hostile work environment.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's NYSHRL and NYCHRL claims are dismissed in their entirety. Plaintiff may proceed with her Title VII claims.

**SO ORDERED.**

                                                                                                                               _____/S/_____
                                                                                                                              SANDRA L. TOWNES
                                                                                                                              United States District Judge

Brooklyn, New York
Dated: March 31, 2014