UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
HEATHER DEBERRY,

                      Plaintiff,

-against-

BROOKDALE UNIVERSITY HOSPITAL
AND MEDICAL CENTER,

                      Defendant.
----------------------------------------------------------x

**MEMORANDUM AND ORDER**

12-cv-6251 (SLT) (RLM)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 1 2 2016 ★
BROOKLYN OFFICE

**TOWNES, United States District Judge,**

    Plaintiff Heather DeBerry brings this employment discrimination suit against her current employer, Brookdale Hospital Medical Center, incorrectly identified in the complaint as Brookdale University Hospital and Medical Center, ("Brookdale"), alleging that she was discriminated against and subjected to a hostile work environment on account of her race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). She also asserts claims for retaliation under the same statute. Her claims under state and city law were previously dismissed by court order and stipulation. (*See* ECF Nos. 18, 22, 28, & 29). Before the Court is Brookdale's motion for summary judgment seeking dismissal of Plaintiff's remaining Title VII claims. For the following reasons, the motion is granted in its entirety and the case dismissed with prejudice. (ECF No. 56).

## LEGAL STANDARD

    Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV .P. 56(a). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, i.e., whether it concerns

facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999) (quotation marks omitted).

The moving party bears the burden of showing that no genuine issue of fact exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The non-movant cannot avoid summary judgment "through mere speculation or conjecture" or "by vaguely asserting the existence of some unspecified disputed material facts." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (quotation marks and citations omitted). Moreover, the disputed facts must be material to the issue in the case, in that they "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

When evaluating a motion for summary judgment, "[t]he court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998). "No genuine issue exists if, on the basis of all the pleadings, affidavits and other papers on file, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, it appears that the evidence supporting the non-movant's case is so scant that a rational jury could not find in its favor." *Chertkova. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996). "If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (quotation marks omitted).

## BACKGROUND

The parties do not dispute the following facts, which are construed in the light most favorable to Plaintiff, the non-moving party. Brookdale is a large voluntary nonprofit teaching hospital and tertiary care center located in Brooklyn. (Knibb Decl, ¶ 2). Plaintiff, who identifies

as black and whose national origin is Jamaican, began her employment at Brookdale as a Clerk in its dialysis unit in 1992. (Defendants' Statement of Facts ("SOF") ¶¶ 4-5). She has served as an Accounts Receivable Clerk ("A/R Clerk") in the hospital's Finance Department since 2003. (SOF ¶¶ 4-5). She has continued to work as an A/R Clerk at Brookdale throughout the entirety of this suit. (*Id.* ¶ 5).

A/R clerks handle billing and receivables and report to specific supervisors, who in turn report to Managers, who in turn report to the Assistant Director of Patient Financial Services. (Knibb Decl, ¶ 3; SOF ¶ 6). A/R clerks are members of 1199SEIU United Healthcare Workers East (the "Union"), which negotiated a collective bargaining agreement with Brookdale governing the terms A/R clerk employment. (Rim Decl., ¶4). Pursuant to that agreement, the Union can grieve and advocate on behalf of A/R Clerks in response to disciplinary or other employment actions. (Rim Decl., ¶4).

Four people have supervised or otherwise overseen Plaintiff as an A/R Clerk: Khadija Knibb, Roy Lim, Melisande Mathurin, and Mohamed Mustafa. (Knibb Decl, ¶ 3; Deberry Decl. ¶ 3). All but Lim are identified as "black" or "African American" in the parties' filings. (SOF ¶¶ 9, 11; Knibb Decl. ¶ 4). Other than her conclusory assertion that Knibb and Lim "discriminated against [her] on the basis of . . . national origin and race," (Deberry Decl. ¶4), Plaintiff has proffered no evidence suggesting discrimination against her by any of these supervisors. Rather, the basis of her complaints involve her coworker, Tishika Williams, whom Brookdale hired as Plaintiff's fellow A/R clerk in 2004. (SOF ¶¶ 16-17). As Plaintiff concedes, Williams never held any supervisory power over her. (*Id.*)

Although Plaintiff and Williams initially worked together amicably and treated each other in a "friendly" manner, friction arose in July 2007 when Williams accused Plaintiff of

3

making disparaging comments to Williams' daughter. (SOF ¶¶ 18-28). According to Plaintiff and her coworker and Union Delegate, Margie Rodriguez, Williams entered Plaintiff's work area, yelled at and insulted her at length, and told her in more certain terms that she was uptight due to a lack of sexual activity. (*Id.* ¶¶ 25-28; Rasnick Decl., at 25:1-25:19.) Neither Plaintiff, Rodriguez nor any other witness aver that Williams made comments referencing race, ethnicity, or national origin during this episode. Khadija Knibb and Roy Lim, both of whom supervised Plaintiff and Williams, were within hearing distance and otherwise aware of the episode. (Rasnick Decl., at 25:1-25:19). Both perceived the incident as a personality clash and advised the two to act professionally and avoid each other. (Knibb Decl ¶¶ 6-7; Lim Decl. ¶ 5).

Williams appears not to have heeded that instruction, and for the following three years she occasionally insulted and otherwise hazed Plaintiff. Specifically, Williams intentionally "bumped" into plaintiff's arm on two occasions in either 2008 or 2009, and attempted to "bump" into her again somewhere between 10 and 15 times between 2008 and 2012. (SOF ¶¶28-30). Once, in 2008, Williams attempted to slam a bathroom door on Plaintiff's hand and, during at least two other encounters in the restroom, shot her challenging looks while declaring "I can't stand you" and aggressively reached across Plaintiff to "yank tissue in front of" her. (*Id.* at ¶¶ 32-33). Several years later, sometime in 2010, Williams shouted "I can't stand her, I can't stand her" across the room. (*Id.* at ¶ 36). Finally, in 2011 Williams "sprayed" liquid, later identified as holy water, in the direction of Plaintiff's desk. Although the water did not to touch Plaintiff, Williams also apparently spread it around her own work area in an act of demarcation. (*Id.* at ¶¶ 37-39; Knibb Decl. ¶9). In response, Plaintiff promptly notified Knibb, by then the Assistant Director of Patient Financial Services, who then "immediately" confronted Williams and warned her that such acts would not be tolerated. (SOF ¶¶ 37-39; Knibb Decl., ¶10). Williams denied

4

the incident, which Knibb then reported to Brookdale's Labor Relations Department, a division of Brookdale's Human Resources Department ("HR"). (Knibb Decl., ¶¶ 1, 9-10).

Around the same time, on August 15, 2011, plaintiff complained directly to HR for the first time in a written letter, attaching a Brookdale-provided, prefabricated "Staff Complaint Form". (Cornet Decl., ¶ 3-4; SOF ¶ 71). The letter recounted the events described above, asserted that Plaintiff's prior complaints to supervisors resulted in no change because Williams was "protected by cronyism," and requested a "hearing to be able to fully describe what I have been subjected to for four years." (Cornet Decl., Ex. 1). Although the letter complained of a "hostile working environment" created by Williams' behavior, it made no mention of race, ethnicity, or national origin. (*Id.*) Nor did it assert that Plaintiff was the victim of discrimination of any kind. The attached Staff Complaint Form (which simply solicited the complainant's name and prompted her to identify with checkmarks the nature of her complaint) had checks next to "Disruptive Behavior" and "Sexual Harassment" with the word "Sexual" crossed out. (Cornet Decl., Ex. 2). No check appeared beside the option for "Discrimination." *Id.*

In response, Trina Cornet, Associate Director of HR, investigated the matter and met with Plaintiff and ten other Brookdale employees, including Williams. (Cornet Decl. ¶¶ 1, 6; SOF ¶77). When Cornet asked Plaintiff why she thought Williams mistreated her, she responded that she "did not know" and made no mention of nationality or racial animus. (SOF ¶¶ 75-76.) Nor did any other interviewees mention nationality or racial animus. (Cornet Decl., ¶¶ 6-9). After an unsuccessful in-person mediation with Plaintiff and Williams and their respective union delegates, Cornet concluded that Williams had violated Brookdale's Disruptive Behavior Policy and issued her a written reprimand warning that further violations would result in termination.

5

(*Id.* at ¶¶ 9-14.) Cornet advised Plaintiff of this result during a meeting the following month, after which Plaintiff made no further internal complaints concerning Williams. (SOF ¶¶ 90-92).

On December 8, 2011, Plaintiff filed a complaint with the New York State Division of Human Rights (NYDHR) against Brookdale for retaliation and discrimination on account of race and national origin in violation of city and state law. (Rasnick Decl., Ex. 1 at 1). On June 15, 2012, the NYDHR found no probable cause and dismissed the complaint because (i) the only allegation of discriminatory animus involved a single comment by Williams in 2007 that she, unlike Plaintiff, was a "real American," (ii) Plaintiff never complained to Brookdale about this potentially discriminatory comment, and (iii) Plaintiff never experienced acts of retaliation. (*Id.* at 1-2.)[1] Plaintiff has submitted no evidence that she notified Brookdale of the "real American" comment before the allegation in her complaint to the NYDHR.

In August 2012, non-party consultant Grant Thornton LLP began altering work streams, employee responsibilities, and other processes in the Finance Department at Brookdale as part of an effort to surmount the hospital's "severe financial difficulties." (SOF ¶¶ 113-116). In the midst of this reshuffling, Plaintiff experienced an increased workload comprised of "Medicaid HMO Accounts that she didn't know how to work" without training that she deemed necessary. (SOF ¶¶ 101-03). At other times, Plaintiff was assigned work on "dental" and "inpatient" accounts, with which she was unfamiliar, and asked to work on accounts that should have been "written off" or were otherwise beyond her normal purview. (*Id.* at ¶¶ 106, 132, 146-49).

Grant Thornton also temporarily implemented "progress reports" for each A/R clerk, on which Plaintiff claims she occasionally received less than maximal marks for productivity. (*Id.*

---

[1] Williams was terminated in April of 2012 for acts of insubordination unrelated to Plaintiff. (SOF ¶ 93).

at 119). At other times, she received maximally high ratings for the same category. (*Id.* at 121). As Plaintiff concedes, these temporary progress reports had no impact on employee evaluations, pay, or employment. (*Id.* at 120).

In October 2012, Plaintiff had an altercation with Katie Yakulis, a Grant Thornton employee who provided consultation to Brookdale between 2012 and 2014. (Knibb Decl., ¶ 23). Yakulis had asked Plaintiff to complete a "Work Question Form," a survey designed to evaluate training needs and document problems relating to a new system of billing codes. (*Id.*; SOF at 16). Yakulis purportedly yelled at Plaintiff when she mistakenly asserted that she had already submitted it. Apparently Plaintiff had completed but not yet submitted the form. That deficiency was quickly cured, and Plaintiff was not disciplined. (*Id.*)

That same month Plaintiff received a phone call from someone who "disguised his voice . . . asking about writing off accounts," (SOF ¶130), which she perceived as an effort orchestrated by Brookdale staff to induce error on her part and, ultimately, lead to grounds for her punishment or termination. (*See* Rasnick Decl., Ex. 2, 261:4-262:12). Plaintiff promptly transferred the call to her supervisor, and Brookdale denies any association with the caller. (SOF 129-31.)

In December of 2012, Plaintiff initiated this action and asserted claims under (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), (2) New York State Human Rights Law, New York State Executive Law § 290, et seq., ("NYSHRL"), and (3) New York City Human Rights Law, Title 8 of the New York City Administrative Code ("NYCHRL"). (ECF No. 1). On Defendant's motion, the Court dismissed her claims under state and city law as barred by the election of remedies doctrine and denied dismissal of her Title VII claims for failure to exhaust administrative remedies. (ECF No. 18.)

Roughly a year after filing this suit, Plaintiff received her annual Performance Evaluation, which she deems "negative" and in retaliation for the instant and NYDHR complaints. (ECF No. 41, ¶ 63). The evaluation gave her an overall rating of "Meets Standards" and contained neutral or favorable ratings and comments for all categories except attendance, for which she "need[ed] improvement." (SOF ¶¶ 140-145).

Finally, in early 2015, some three years after this action began, Plaintiff was suspended for one day after Brookdale learned that she had disclosed hundreds of pages of un-redacted billing records in violation of the hospital's HIPAA policy during discovery in the instant case. (SOF ¶¶ 152-73). Despite acknowledging her training and understanding that such disclosure violated the hospital's HIPPA policy, Plaintiff removed original, confidential information from the hospital, claiming she did so at the direction of her counsel. (Id.) Lloyd Bailey, Labor Relations Manager, headed an investigation and, after meeting Plaintiff and the hospital's chief Compliance officer, concluded that Plaintiff knowingly violated the hospital's HIPAA policy and imposed a one day suspension and final warning as punishment. (Id.) Bailey conferred with Plaintiff's union, which agreed not to object to any punishment short of termination. (Bailey Decl. ¶¶ 8-12.) When Bailey met with Plaintiff and her union delegate to formally impose her suspension, both "agreed that the issued discipline was agreed to and would not be objected to or grieved by the Union." (Id. at ¶12). Several days later Plaintiff nevertheless filed a Second Amended Complaint that added allegations that her suspension was retaliatory in violation of Title VII. (ECF No. 41 at ¶¶65-67).

In her December 2014 deposition, Plaintiff disclosed for the first time that Williams had called her a "Damn Coconut," a derogatory term for people of Caribbean descent, once in 2007 and "about 15, 20, 25 times" in the following three to four years. (SOF ¶¶94-96). Beyond

8

summarily testifying that "whenever anything happened, I would tell [Brookdale] generally all what happened," (Rasnick Decl., Ex. 3 at 127:2-127:13), Plaintiff identified no evidence that she notified any Brookdale personnel of these comments. Finally, Plaintiff admits that she received and signed acknowledgements for Brookdale's "Zero Tolerance" and "Complaint Reporting Policies," which allowed her to bring a discrimination complaint to her supervisors or "up the chain of command" if necessary. (SOF ¶¶ 41-53).

## DISCUSSION

Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). On that basis plaintiffs may assert claims for both direct discrimination and a hostile environment. *See, e.g., Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002). Separately, Title VII also prohibits an employer from retaliating against an employee because she has engaged in protected activity, namely, "oppos[ing] any practice made an unlawful employment practice [under Title VII], or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a). Although her legal theories are less than clear, Plaintiff appears to assert claims for (i) direct discrimination, (ii) hostile environment, and (iii) retaliation, each premised on her race and national origin. As explained below, she has not raised a genuine issue of material fact for trial under any of those theories and judgment is entered against her as a matter of law.

*1. Discrimination Claims*

A plaintiff establishes a prima facie case of racial discrimination in her employment by showing that (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered a material adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination. *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir.2012). Although the evidence necessary to establish a *prima facie* case has been characterized as "minimal" and "de minimis," *see Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 381 (2d Cir.2001) (citing cases), it "is not non-existent." *Almond v. Westchester County Dept. of Corrections*, 425 F.Supp.2d 394, 399 (S.D.N.Y. 2006). Accordingly, "summary judgment must be granted whenever the undisputed facts, viewed most favorably to the non-moving plaintiff, do not make out a prima facie case." *Id.* Likewise, summary judgment is appropriate where the only evidence offered to establish a *prima facie* case is conclusory and insufficiently particular to permit a defendant to respond, since "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all cases." *D'Agostino v. LA Fitness Int'l, LLC*, 901 F. Supp. 2d 413, 421 (E.D.N.Y. 2012) (citations and quotation marks omitted).

Here, Plaintiff has failed to establish either the third or fourth prongs of her *prima facie* case. To establish the third prong, Plaintiff must provide proof that she experienced a "'materially adverse change' in the terms and conditions of [her] employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (quoting *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 446 (2d Cir.1999). "To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job

10

responsibilities.' " *Id.* (quoting *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993); *Pimentel v. City of New York*, No. 00 Civ. 326, 2002 WL 977535, at *3 (S.D.N.Y. May 14, 2002) ("A material adverse change is one that has an attendant negative result, a deprivation of a position or an opportunity.")

While Plaintiff has not articulated which actions she considers adverse for the purpose of meeting her burden (let alone provided any analysis on this point), the only employment actions referenced that preceded her state action involved (i) temporary assignment to dental and HMO accounts without sufficient training and (ii) being "yelled at" by Katie Yakulis, a consultant, for failing to submit a requested survey form. Neither constitute "a change in working conditions [that is] more disruptive than a mere inconvenience." *See Galabya*, 202 F.3d 636. To constitute an adverse employment action, a change in job responsibility must be accompanied by materially adverse changes in employment, such as a demotion or a loss of wages. *See Pimentel*, 2002 WL 977535, at *3. A lack of training constitutes adverse action only where it "bears on either plaintiff's opportunities for professional growth and career advancement or directly on plaintiff's compensation." *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 352 (S.D.N.Y. 2006)) (citations and quotations omitted). Here, there is no evidence that Plaintiff suffered anything beyond temporary inconvenience. And a single incident of yelling is not actionable because, as courts have often repeated, "Title VII is not 'a general civility code,'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 75 (2d Cir. 2001) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

Plaintiff has also failed to establish the fourth prong of her *prima facie* burden, that any of Brookdale's actions "took place under circumstances giving rise to an inference of discrimination." *Barrett*, 685 F.3d at 202. Regarding racial discrimination, she has not adduced

evidence or even alleged facts relevant to race beyond her own racial identity. Indeed, the only references to race in her filings are either conclusory assertions of racial discrimination or simply statements of her own racial identification. (DeBerry Decl ¶3-4.) Regarding her national origin-based claims, she has offered no proof that anyone with supervisory authority acted with animus. The evidence relevant to discrimination based on her national origin were Williams' "damn coconut" and "not American" comments, but nothing in the record suggests that Plaintiff's superiors were aware of these comments. Indeed, the "not American" comments first appeared in Plaintiff's NYDHR complaint, and Plaintiff made no mention of the "coconut" comments until her deposition several years later. In short, Plaintiff has proffered no proof that *any* employment actions were taken against her because of race or national origin. She has therefore failed to established grounds for an inference that employment actions were taken against her for discriminatory reasons.

## 2. *Hostile Environment Claims*

In order to prevail on a hostile work environment claim, a plaintiff must make two showings: (1) that "the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" and (2) that there is a "specific basis for imputing the conduct creating the hostile work environment to the employer." *Feingold v. New York*, 366 F.3d 138, 149-50 (2d Cir.2004) (internal quotation marks omitted). Establishing the second prong depends on who does the harassing and, "[i]n a situation such as this, 'when the harassment is attributable to a coworker, rather than a supervisor . . . the employer will be held liable only for its own negligence.'" *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009) (quoting *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 63 (2d Cir.1998); *see also Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2441 (2013) ("an employer is directly liable for an

12

employee's unlawful harassment if the employer was negligent with respect to the offensive behavior.") A plaintiff therefore bears the burden to prove her employer's negligence by showing either (i) that it "failed to provide a reasonable avenue for complaint," or (ii) that "it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Id.* (citing *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir.2000)).

Here, assuming but not deciding that Plaintiff raised an issue of fact regarding severity and pervasiveness, she has nevertheless failed to offer any proof or even allege facts satisfying the second prong of her hostile environment claim. Her brief opposing summary judgment does not even address the issue. The Court, having thoroughly reviewed the record, finds that Plaintiff acknowledged awareness of clearly articulated policies prohibiting discriminatory conduct and providing "open-door" procedures for filing a complaint thereunder. (Cornet Decl., Exs. 9-11, 14; Rasnick Decl., Ex. 2 at 84:1-85:5). She nevertheless failed to pursue that avenue of complaint and has not suggested it would have been futile. That is, while she complained of Williams' boorish conduct, she never once mentioned race or national origin. In these circumstances, no reasonable juror could find that Brookdale "failed to provide a reasonable avenue for complaint." *Notaro v. Fossil Indus., Inc.*, 820 F. Supp. 2d 452, 459 (E.D.N.Y. 2011) (PARENS); *see also Duch v. Kohn*, No. 04 CIV 109 LAP, 2007 WL 2230174, at *6 (S.D.N.Y. Aug. 3, 2007) (collecting cases for the proposition that employees who acknowledged similar policies had a reasonable avenue of complaint) (aff'd in part and vacated in part on other grounds), 588 F.3d 757 (2d Cir. 2009).

Likewise, aside from her vague and conclusory assertion that "whenever anything happened, I would tell [Brookdale] generally all what happened," (Rasnick Decl., Ex. 3 at 127:2-127:13),

13

Plaintiff has offered no evidence that *anyone* at Brookdale had actual or constructive notice of Williams' discriminatory comments. To the contrary, this conclusory assertion is undercut by both her own testimony and the record as a whole. Her internal complaint decried "cronyism" and made no mention of race or national origin, and her Staff Complaint Form left "discrimination" unchecked. (Cornet Decl., Ex. 1.) Indeed, in deposition testimony she admitted that she did not report Williams' efforts to "bump" her in the hallway. (Kallus Aff., Ex. A, 131:8 – 131:11.) Moreover, during Cornet's investigation of the matter, none of the more than ten employees interviewed mentioned race or national origin. (Cornet Decl. ¶8). When Cornet asked Plaintiff why she thought Williams mistreated her, she responded that she "did not know" and made no mention of national or racial animus. (SOF ¶ 75-76.) Prior to bringing suit, Plaintiff made no further complaints about Williams conduct after Cornet completed her investigation. (*Id.* at ¶¶ 90-92). Under these circumstances, where a Plaintiff complains only of non-discriminatory conduct and provides no reason for imputing knowledge of hostility based on a protected status, a co-worker's actionable conduct will not be imputed to the Plaintiff's employer. *See, e.g., McBride-Crawford v. Gen. Mills Cereals Operations, Inc.*, No. 12-CV-1180S, 2015 WL 4208608, at *4 (W.D.N.Y. July 9, 2015) (holding there was no imputation of liability where Plaintiff gave no notice of sexual harassment by coworkers); *Uko-Abasi v. AmeriPath, Inc.*, No. 09 CIV. 3629 DABRLE, 2011 WL 924894, at *8 (S.D.N.Y. Jan. 25, 2011), report and recommendation adopted, No. 09 CIV. 3629 DAB, 2011 WL 924893 (S.D.N.Y. Mar. 15, 2011) (no imputation of liability where complaints to employer did not assert harassment on

the basis of religion). Plaintiff has therefore failed raise grounds for imputing liability to Brookdale and has not met her burden for her hostile environment claim.

### 3. *Retaliation Claims*

To make out a *prima facie* case of retaliation, a plaintiff must demonstrate that "(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012). Regarding the third element, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). If Plaintiff successfully establishes a *prima facie* case of retaliation, "the defendant must then 'articulate a legitimate, non-retaliatory reason for the adverse employment action.' If so, 'the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action.'" *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (citation omitted).

Here, Plaintiff fails to establish a *prima facie* case as premised on all but one of her alleged adverse employment actions. She has failed to articulate what adverse employment actions she suffered as a form of retaliation, but, read liberally, she appears to assert that she suffered retaliation in the form of:

- Being asked to follow up on an account with only $1.52, which should have been summarily "written off." (SOF ¶ 6, 100-07).
- Being asked to work on accounts for which she had insufficient training (SOF ¶¶ 113, 117, 135-39)
- Receipt of a negative "progress report" (*Id.* ¶¶ 119)

15

- Receipt of an excessive workload compared to her colleagues (109)
- Receipt of a negative performance evaluation (SOF ¶ 140-45)
- Being asked to work on "in-patient accounts" (SOF ¶¶ 146-49)
- Receiving a telephone call from someone disguising their voice, intent on inducing her to make an error (SOF ¶¶ 129-31)
- A one-day suspension with final warnings imposed after a finding that she violated Brookdale's HIPAA policy (SOF ¶¶ 150-51).

Only the latter action arguably constitutes a materially adverse employment action for the purposes of establishing a *prima facie* case.

As noted above, to constitute an adverse employment action, a change in job responsibility must be accompanied by materially adverse changes in employment, such as a demotion or a loss of wages. *See Pimentel*, 2002 WL 977535, at *3. Thus, adverse employment actions are those causing detriment to "either plaintiff's opportunities for professional growth and career advancement or directly on plaintiff's compensation." *Hill v. Rayboy-Brauestein*, 467 F. Supp. at 352. That Brookdale asked Plaintiff to follow up on an account with a *de minimus* amount is perhaps trifling, but not material. And, once again, she has provided no proof that she suffered a loss in opportunity, growth, or compensation as a result of working on dental and HMO accounts. In fact, plaintiff does not dispute that she refused to work on dental accounts after two months and that her "employment was not negatively impacted in any way . . . [by] her decision to stop performing that work." (SOF ¶¶ 137-39.) Nor does Plaintiff dispute that the "progress reports" she considers negative were a "short lived exercise" [sic] implemented by a consultant that had "no impact on employee evaluations, pay or employment." (SOF ¶ 120). Her claim to have suffered an excessive workload relative to her peers is wholly unsubstantiated—she admits that she has no knowledge of her peers' workload and does not rebut or dispute Brookdale's evidence showing a similar workload for each A/R clerk. (*Id.* ¶¶ 110-12.) Further,

16

contrary to her characterization, Plaintiff's "performance evaluations" were not "negative" but generally positive. Indeed, she received positive or neutral grades and comments in all areas save attendance. (*See* Knibb Decl. ¶30, Ex. 12.) Without an identified detrimental consequence, such evaluations are not adverse employment actions. See *Carmellino v. Dist. 20 of N.Y. City Dep't of Educ.*, No. 03 Civ. 5942, 2006 WL 2583019, at *3 (S.D.N.Y. Sept.6, 2006) ("[A] negative performance evaluation—without more—does not ordinarily constitute an adverse employment action for purposes of a discrimination claim.") Finally, Plaintiff's claim that Brookdale orchestrated an "anonymous" call in an effort cause her to commit punishable error is entirely speculative. Her only proof on this matter is her own testimony and declaration, which assert that calls to her direct line were uncommon and that the caller "disguised" his voice. (Rasnick Decl., 261:1 - 262:26). These facts in no way suggest Brookdale's involvement, nor do they establish that she suffered any adverse consequences.

On the other hand, and as Brookdale concedes, Plaintiff's one-day suspension constitutes an adverse employment action. Assuming but not deciding that Plaintiff otherwise established a *prima facie* case premised on this one-day suspension, the Court holds that she nevertheless fails to establish that Brookdale's legitimate reason for suspending her was pretext. In other words, Brookdale has articulated and supported with ample evidence a legitimate, non-retaliatory reason for the one-day suspension.

Specifically, Brookdale provided evidence establishing that Plaintiff violated its Health Information Portability and Accountability Act ("HIPPA") by removing original copies of billing records with unredacted confidential information, providing those materials to her counsel, and ultimately producing this materials in the instant litigation. (SOF ¶¶ 158-73.) Plaintiff admits that she removed these materials with no legitimate business purpose, as required by Brookdale's

HIPPA policy, despite her understanding and prior acknowledgment of the policy. (SOF ¶¶ 161-63). On this basis, and after conferring with Brookdale's Compliance Department and Plaintiff's Union representatives, Brookdale's Labor Relations Manager, Lloyd Bailey, imposed a one-day suspension and final warning as punishment. (SOF ¶¶ 166-73). Both Plaintiff and her Union Delegate approved this punishment and agreed not to file a grievance in the matter. (*Id.*) Plaintiff's Union Delegate testified that she considered Plaintiff "lucky" and believed Brookdale had grounds to fire her, (*id.* ¶¶ 171-72), and Bailey testified that other Brookdale employees have been suspended for up to two weeks for similar violations (Bailey Decl. ¶ 11.)

Brookdale having articulated and substantiated a non-discriminatory reason for the one-day suspension, Plaintiff bears the burden "to show that [Brookdale's] stated reason for the adverse employment action was in fact pretext." *Muhammad v. New York City Transit Auth.*, 52 F. Supp. 3d 468, 485 (E.D.N.Y. 2014) (citations and quotation marks omitted). Plaintiff has not met this burden, and provides no evidence from which a factfinder can reasonably conclude that her suspension was based on discrimination. Rather, she summarily asserts that she took the documents "inadvertently" and committed a "minor error at best and no discipline should have been meted out at all." (Pl. Mem. at 18). At best Plaintiff has implied that the temporal proximity between her suit and suspension evidence pretext. However, such "temporal proximity alone is not enough to establish pretext in this Circuit." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254-55 (2d Cir. 2014). In short, Plaintiff has provided no evidence establishing that her suspension was pretextual or retaliatory.

In summary, Plaintiff has failed to establish a *prima facie* case for her discrimination claim, failed to establish or even articulate grounds for imputing liability for a hostile environment to her employer, and failed to establish a *prima facie* case for retaliation. In each

instance, her failure stems in large part from a complete absence of evidence showing that Brookdale knew or should have known of comments or other actions related to her race or national origin.

## CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is GRANTED and Plaintiff's complaint dismissed in its entirety. The Clerk of Court is directed to enter judgment in accordance with the above and close the case.

**SO ORDERED.**

/s/ *Sandra L. Townes*
/SANDRA L. TOWNES
United States District Judge

Brooklyn, New York
Dated: July 8, 2016